**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HAKIM KELLY, | : | |
| | : | Civil Action No. 11-7256 (PGS) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| N.J. DEPT. OF CORRECTIONS, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff pro se
Hakim Kelly
12 Rutgers Street
Irvington, NJ  07111[1]

**SHERIDAN**, District Judge

Plaintiff Hakim Kelly, a prisoner confined at Northern State Prison in Newark, New Jersey, seeks to bring this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

---

[1] Although Plaintiff has advised the Court to use this street address, he has contemporaneously stated that he remains confined, and the New Jersey Department of Corrections Inmate Locator reflects that Plaintiff remains confined at Northern State Prison in Newark, New Jersey.

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint.

Plaintiff alleges that on January 4, 2011, he was confined at a halfway house known as "Harbor House." Plaintiff alleges that he is a practicing Muslim. On January 4, 2011, he was instructed to submit to urine testing under the monitoring of a counselor Defendant Mr. Beaman, who Plaintiff alleges is an openly gay man. Plaintiff alleges that he refused the test and explained to the Director of Harbor House, Mr. Fielder, that it would be a violation under the standards of his religion to submit to monitoring by a gay man. Plaintiff alleges that Mr. Fielder agreed and then instructed him to submit to urine monitoring under another counselor.

Plaintiff alleges that the next day he was returned to the Central Reception and Assignment Facility because his urine test was positive for controlled dangerous substances. Plaintiff asserts that it was later learned that somebody had tampered with the urine specimen and that the test result was a false positive. Accordingly, on January 20, 2011, it was determined that Plaintiff would face no disciplinary charges and would be

returned to a halfway house or to the Bo Robinson Assessment Center.

Plaintiff alleges that on February 22, 2011, during a final assessment case conference, Defendant Ms. Stone, alleged to be an employee of the Bo Robinson Assessment Center, stated that she hates it when "you guys use your religion when it is convenient for you." (Complaint, ¶ 17.) Plaintiff alleges that after the meeting he was placed on a "baseless and erroneous behavior contract" because he practices Islam. (Complaint, ¶ 17.)

Plaintiff alleges that at a second classification hearing the next day, February 23, 2011, Defendant Ms. Klenke, an assessment counselor at the Bo Robinson Assessment Center, stated that Plaintiff better start programming, "or else." (Complaint, ¶ 18.) Plaintiff alleges that he was already active in programming. Plaintiff also asserts that Defendant Mr. George Robinson, an employee of the New Jersey Department of Corrections, made "several intimidating and isolated threats" toward the Plaintiff. (Complaint, ¶ 18.) Plaintiff alleges that Mr. Robinson also told Plaintiff that, if he didn't comply with the orders of the facility, he would be sent back to prison and his parole would be revoked until Mr. Robinson felt Plaintiff was ready to be released.

Plaintiff alleges that on February 24, 2011, he filed internal grievances against the aforementioned staff members, for

their attempts to derail his progression at the assessment center and to hinder him from practicing Islam.  Plaintiff alleges that on March 4, 2011, Defendant Deputy Director Ms. Newborn refused to fax his grievance information to his attorney.  Plaintiff alleges that, as a tactic to silence him for composing the grievance, he was given a .257 disciplinary charge for "Violating a Condition of any Community Release Program."  Apparently as a result of this disciplinary charge, he was returned to the Central Reception and Assignment Facility ("CRAF").

Plaintiff alleges that at CRAF he was placed under the watch of an NJDOC employee, with respect to whom he has a "keep separate" order.  Plaintiff alleges that this housing assignment was "orchestrated solely by Mr. George Robinson, in retaliation and intimidation" toward the Plaintiff.  (Complaint, ¶ 23.)  Plaintiff alleges that the defendants could never produce any "legal, standing documents and/or proof" that he had broken the conditions of his program contract.

Plaintiff asserts that the aforementioned facts amount to violations of his First Amendment right to practice his religion, his Eighth Amendment right to be free from cruel and unusual punishment, and of his Fourteenth Amendment rights to due process and equal protection.  In addition to the individuals described above, Plaintiff names as defendants the New Jersey Department of

4

Corrections and the Community Education Center.[2]  Plaintiff seeks monetary, declaratory, and injunctive relief.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

---

[2] Plaintiff alleges that the Community Education Center is the parent company that oversees the operation of facilities such as Harbor House and the Bo Robinson Center.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The Court of Appeals for the Third Circuit has applied the Twombly pleading standard to civil rights complaints.

> Context matters in notice pleading.  ...  Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft, 556 U.S. at 678 (citations and quotation marks omitted) (quoted in Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012).

Taking this guidance into account, the Court of Appeals instructs that the analysis, to determine whether a complaint meets the pleading standard, unfolds in three steps.

> First, we outline the elements a plaintiff must plead to state a claim for relief. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Bistrian, 696 F.3d at 365 (citations omitted).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.  ANALYSIS

A.  Claims Against the New Jersey Department of Corrections

The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes

are persons within the meaning of § 1983.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 64, 70-71 and n.10 (1989); <u>Grabow v. Southern State Correctional Facility</u>, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983).

For all the foregoing reasons, the claims against the New Jersey Department of Corrections will be dismissed.

B.   <u>Claims Against Community Education Center and Its Employees</u>

The only allegation made against the Community Education Center is that it is the "parent company" that oversees the operation and structuring of community release programs such as Bo Robinson and Harbor House.  It is a private enterprise, not a government agency.  Allegations of wrongdoing are also made against employees of certain Community Education Center facilities, specifically, (a) Ms. Stone, Ms. Klenke, and Ms. Newborn, employees of the Bo Robinson Assessment Center, and (b) Mr. Beaman, an employee of Harbor House.

Private action is not converted into action "under color of state law," as required by § 1983, merely by "some tenuous connection to state action." <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995).  Thus, the mere fact that a private actor is performing a public contract at the time of the alleged wrongdoing does not automatically mean that the private contractor's conduct is "state action."  See <u>Rendell-Baker v.</u>

Kohn, 457 U.S. 830, 841 (1982).  Instead, a private actor may be deemed to be acting "under color of state law" only when "the conduct allegedly causing the deprivation of a federal right" is "fairly attributable to the state."  Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982).

A private entity's conduct is "fairly attributable to the state," and it can be sued under § 1983 only where (1) it "has exercised powers that are traditionally the exclusive prerogative of the State," Mark v. Borough of Hatboro, 51 F.3d 1137, 1141-42 (3d Cir.), cert. denied, 516 U.S. 858 (1995) (the "public function" test); (2) the State and the private party act in concert or jointly to deprive a plaintiff of his rights, Adickes v. S.H. Kress & Co., 398 U.S. 144, 170-171 (1970); (3) the State has permitted a private party to substitute his judgment for that of the State, Cruz v. Donnelly, 727 F.2d 79, 81-82 (3d Cir. 1984); or (4) the private party and the State have a symbiotic relationship as joint participants in the unconstitutional activity, Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 620 (1991).

In addition, municipal corporations and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches

only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

The same standard applies to claims against a private corporation that is functioning as a "state actor." See Weigher v. Prison Health Services, 402 Fed.Appx. 668, 669-70, 2010 WL 4739701 (3d Cir. Nov. 23, 2010).

Here, Plaintiff has failed to allege facts that would permit this Court to find that Community Education Centers, or its

employees, functioned as a state actor.[3]  Federal courts are split on the question whether organizations that operate halfway houses, and their employees, are state actors for purposes of § 1983.  Compare, e.g., Graves v. Narcotics Service Counsel, Inc., 605 F.Supp. 1285 (1985) (insufficient nexus to find state action, where halfway house provides drug detoxification treatment as a condition of plaintiff's probation); McWhirt v. Putnam, Civil No. 06-4182, 2008 WL 695384 (W.D. Mo. March 12, 2008) (same, with respect to community agency which houses both current and former inmates, parolees, and non-inmates); Phillips v. Goord, Civil No. 08-0957, 2009 WL 909593 (W.D.N.Y. Apr. 1, 2009) (same, where no factual allegations regarding non-profit halfway house providing services to a parolee); to Aladimi v. Alvis House/Cope Center, Civil No. 10-0121, 2012 WL 726852 (S.D. Ohio March 6, 2012) (operation of a halfway house that houses prisoners for pre-release programming is "somewhat analogous" to the operation of a prison, a "historically governmental function").  In this action, in any event, Plaintiff has failed to allege any facts that would suggest that Community Education Centers functioned as a state actor.  For example, Plaintiff does not describe the nature of the contractual relationship, if any,

---

[3] Its website reflects that Community Education Centers, Inc., is a provider of re-entry treatment and education services for adult correctional populations throughout the United States. See http://www.cecintl.com/about_overview.html .

with the New Jersey Department of Corrections.  He does not describe the nature of the services provided, or the nature of the population to whom those services are provided.[4]

Moreover, Plaintiff has failed to allege any facts that would suggest that Community Education Centers promulgated any policy or practice that encouraged the conduct he challenges here.  Accordingly, Plaintiff has failed to state a claim against Community Education Centers.

As the allegations made by Plaintiff are insufficient to establish that Community Education Center functioned as a "state actor," they similarly are insufficient to establish that counselors employed by Community Education Centers or its facilities functioned as state actors.  Accordingly, all claims against Defendants Stone, Klenke, Newborn, and Beaman will be dismissed.

C.   Retaliation Claim Against George Robinson

Plaintiff alleges that Defendant George Robinson, who allegedly sits on the Classification Board at the Central Reception and Assignment Facility, told Plaintiff (prior to his return to the halfway house) that if he didn't comply with the

---

[4] As Plaintiff alleges that he was warned that violation of the rules of the halfway house would result in revocation of his parole, it appears that he was assigned to the halfway house as a condition of parole, not as a pre-release prisoner; thus, based upon the allegations of the Complaint, the halfway house does not appear to have been functioning as a correctional facility.

orders of the halfway house his parole would be revoked and he would be returned to prison.[5]  Plaintiff further alleges that when he was returned to prison from the halfway house, George Robinson assigned him to a housing assignment under a particular correctional officer, with respect to whom he had a "keep separate" order, "in retaliation and intimidation toward the plaintiff."  (Complaint, ¶¶ 19, 23.)  In retaliation for what, specifically, Plaintiff does not state.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ."  White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 2001 WL 185120 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).  See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt.

---

[5] In light of this allegation, as noted above, the Court understands Plaintiff to be asserting that he was assigned to a halfway house as a condition of parole.  Certainly, it is not a violation of any constitutional right for a prison official to advise a parolee that his parole will be revoked if he violates a condition of parole.

16

Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.  To the extent Plaintiff asserts that Defendant Robinson acted "in retaliation" for Plaintiff's violation of parole and return to prison, Plaintiff has failed to assert that he had engaged in any constitutionally-protected activity.  To the extent Plaintiff seeks to base the claim of retaliation on any other purported protected activity, the allegations of the Complaint are too vague and conclusory to raise his right to relief "above the speculative level."  Finally, in the absence of any factual allegations regarding Defendant Robinson's knowledge of the purported constitutionally-protected activity, Plaintiff has failed to allege facts demonstrating that the protected activity was a substantial or motivating factor in the housing assignment.  Accordingly, Plaintiff has failed to state a claim for retaliation against Defendant Robinson.

## V.   CONCLUSION

For the reasons set forth above, the claims against the New Jersey Department of Corrections will be dismissed with prejudice.  All remaining claims will be dismissed without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1), for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his

pleading with facts sufficient to overcome the deficiencies noted herein with respect to those claims dismissed without prejudice, the Court will grant Plaintiff leave to file an application to re-open accompanied by a proposed amended complaint.[6]

An appropriate order follows.

*s/Peter G. Sheridan*
Peter G. Sheridan
United States District Judge

Dated: December 10, 2012

---

[6] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.